UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DENNIS MICHAEL CONLIN, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-01287-MTS |
| | ) |
| TERI LAWSON, | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Dennis Michael Conlin, Jr.'s Petition under 28 U.S.C. § 2254 for writ of habeas corpus. For the following reasons it is denied.

**I.      Procedural History**

In March of 2016, Dennis Michael Conlin, Jr. ("Petitioner") was convicted after a bench trial of attempted kidnapping, attempted first-degree sexual abuse, and third-degree assault. On May 23, 2016, Petitioner was sentenced to concurrent terms of seven years for attempted kidnapping, four years for attempted first-degree sexual abuse, and one year for third-degree assault. On December 11, 2017, the Missouri Court of Appeals for the Eastern District ("state court") affirmed Petitioner's conviction and sentencing. *State v. Conlin*, 532 S.W.3d 705 (Mo. App. E.D. 2017). Petitioner then filed a motion for post-conviction relief under Supreme Court of Missouri Rule 29.15, alleging that Petitioner's trial counsel was ineffective for failing to litigate a motion to suppress statements made to detectives because he had not received *Miranda*[1]

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

warnings. After an evidentiary hearing, the motion court denied Petitioner's Rule 29.15 motion. The state court affirmed the denial of Petitioner's motion for post-conviction relief. *Conlin v. State*, 609 S.W.3d 103 (Mo. App. E.D. 2020). On October 27, 2021, Petitioner filed this action for habeas relief. Doc. [1]. Petitioner was released from Farmington Correctional Center. However, he is currently serving a lifetime federal probation sentence and is on location monitoring. Doc. [14] at 1.[2]

## II.  Factual Background

On April 30, 2015, Victim was jogging on City Centre Trail in St. Peters, Missouri, when Petitioner rode his bicycle past her "a little too close for comfort" twice within the span of a few minutes. Doc. [9-13] at 2. Victim was able to see Petitioner's appearance and identify his clothes– a gray cut-off t-shirt, black shorts, a red hat, and reflective sunglasses. Minutes later, Petitioner ran up behind Victim, put his hands on her lower back, and pushed her, causing her to fall over. Victim screamed, but no one came to assist her. Victim allowed Petitioner to help her up because he was much larger than her and she did not believe she could run quickly enough to escape him. Petitioner then gave her an "unwanted" hug. Doc. [9-8] at 3. Victim took a step back and Petitioner apologized, saying "I have a problem, I'm going to get help, just promise me you're not going to tell anybody." Doc. [9-13] at 2. Petitioner then attempted to give Victim another hug. When Victim put her hands in front of her, indicating she did not want another hug, Petitioner turned and ran away. Victim found a park ranger and reported the incident. She testified that she felt "scared" and "terrified" by Petitioner's actions. Doc [9-8] at 4.

---

[2] "For a habeas petition to continue to present a live controversy after the petitioner's release" from custody, "there must be some remaining 'collateral consequence' that may be redressed by success on the petition." *See Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007). Petitioner has identified his lifetime federal probation sentence and location monitoring as collateral consequences that render his Petition a live controversy.

2

The park ranger contacted the police and Detective Christopher Scott Ruder ("Detective Ruder") interviewed Victim, obtaining a description of Petitioner. Victim identified Petitioner in the second of two photographic lineups Detective Ruder created. Detective Ruder and another detective ("the detectives") then interviewed Petitioner at his residence. When first asked about where he had been the previous day, Petitioner denied being at the trail. When asked if he had a bicycle, he showed the detectives the bicycles he had and claimed he had not used them in years. Petitioner also let the detectives see his bedroom. They observed a red hat and sunglasses in the room, similar to those described by Victim. When asked again about his possible involvement in the incident, Petitioner admitted he was the one who pushed Victim. As the conversation continued, Petitioner told the detectives he could tell that Victim was scared, he knew his urge to push her down was not normal, he was "stressed" leading up to the incident, and he had prior issues revolving around sex. He also admitted he had exposed himself to people in the past to shock them.

Detective Ruder testified at the bench trial that Petitioner did not ask for an attorney at any point in their conversation. He testified that Petitioner was not confined to a particular room and that Petitioner moved throughout the home in the course of their conversation. Detective Ruder also testified that they expressed to Petitioner multiple times that the conversation was voluntary. The detectives arrested Petitioner after their conversation and Petitioner consented to a search of his bedroom. The detectives seized the hat and sunglasses as well as two pornographic DVDs, a thumb drive, and a journal written by Petitioner in which he had written,"I'm just so focused on sex." Doc. [9-13] at 3. Petitioner was found guilty of all charges at a bench trial.

### III. Legal Standard

#### a. Claims Reviewed on the Merits

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), though such relief is "limited and deferential." *Lonholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under AEDPA, § 2254(d), habeas relief is only permissible if the state court's determination:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established Federal law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of the [Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005).

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," *id.* at 141, or "if the state court unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

#### b. Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his

4

attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. *Id.* at 689. To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)). First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. *Strickland*, 466 U.S. at 696. Under AEDPA, federal courts must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. *Id.* at 100-01. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'*s* deferential standard." *Id.* at 105. Furthermore, a state court's findings of fact, made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

## IV. Discussion

**Grounds 1 and 2: Petitioner claims the state motion court erred in denying his Rule 29.15 motion because both his trial attorney and appellate attorney were ineffective for failing to argue that Petitioner's convictions for both attempted kidnapping and attempted sexual abuse in the first degree violated double jeopardy in that they were cumulative punishments for one "undivided continuous course of conduct." Petitioner claims this violated his rights guaranteed by U.S. Const. Amends. V, VI and XIV.**

Here, Petitioner confined Victim without her consent for a substantial period for the purpose of terrorizing her. This conduct was identified as a substantial step towards the commission of kidnapping.[3] Petitioner's second charge was for pushing Victim to the ground, restraining her, and not allowing her to leave. This conduct was identified as a substantial step towards the commission of first-degree sexual abuse.[4] Petitioner claims that his trial counsel and appellate counsel failed to argue that Petitioner's convictions violated double jeopardy because Petitioner's convictions for attempted kidnapping and attempted sexual abuse in the first degree constituted cumulative punishments for the same course of conduct. Petitioner claims there was only one "substantial step" toward one crime, so he can only be convicted of one offense. Doc. [1] at 14.

Double jeopardy "protects against multiple punishments for the same offense." *United States v. Anderson*, 783 F.3d 727, 738–39 (8th Cir. 2015). A double jeopardy challenge fails if one of the two offenses requires proof of an additional fact not required by the other. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The focus is on the proof necessary for statutory elements of the offenses, rather than the evidence presented at trial." *Illinois v. Vitale*, 447 U.S.

---

[3] Under Revised Statutes of Missouri Section 556.110.1(5), kidnapping occurs when someone "unlawfully removes another without his or her consent from the place where he or she is found or unlawfully confines another without his or her consent for a substantial period, for the purpose of… (5)… terrorizing the victim…."

[4] Under Revised Statutes of Missouri Section 565.100.1, sexual abuse in the first degree is when someone "subjects another person to sexual conduct… by the use of forcible compulsion."

6

410, 416 (1980).

On review, the state court noted that Revised Statutes of Missouri Section 556.041 states "When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each offense." Doc. [9-13] at 8. However, the statute also states that a person may not be convicted of more than one offense when "[t]he offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted…." *Id.* [5] The state court correctly identified the issue at hand and determined that Petitioner's right against double jeopardy was not  violated because each of these charges required the court to find proof of a fact not required for the other offense. For the charge of attempted kidnapping, the trial court found Petitioner had the purpose to terrorize Victim. For the charge of attempted sexual abuse in the first-degree, the trial court found Petitioner had the purpose to subject Victim to sexual conduct by forcible compulsion. Furthermore, the conviction of attempted sexual abuse in the first-degree required a finding that Petitioner pushed Victim while the conviction of attempted kidnapping required a finding that Petitioner confined Victim. Therefore, attempts of two distinct crimes were present. Petitioner has not shown that his trial or appellate counsel were inadequate for failing to argue that Petitioner's convictions violated double jeopardy because such an argument would not have been meritorious, and the result of the proceeding would not have been different. Petitioner cannot satisfy the "doubly differential" standard required to obtain habeas relief on his claims regarding counsel's ineffective assistance. The decision of the state court was neither unreasonable, nor was it based on an unreasonable determination of the facts. Grounds 1 and 2 are denied.

---

[5] The state court then stated, with respect to Petitioner's two convictions for attempt, Section 564.011.1 provides, "A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense." Doc. [9-13] at 8.

7

**Ground Three: Petitioner claims the state motion court erred in denying his Rule 29.15 motion because his trial counsel was ineffective for failing to litigate a motion to suppress statements made by Petitioner to the detectives. Petitioner claims this violates his rights guaranteed by U.S. Const. Amends. V, VI and XIV.**

At the evidentiary hearing for Petitioner's Rule 29.15 Motion, Petitioner's trial counsel testified that he had filed a motion to suppress, but Petitioner and trial counsel jointly decided not to argue the motion after discussing its merits. Doc. [9-9] at 37. Trial counsel further testified at the evidentiary hearing that he did not think the motion to suppress would be successful because Petitioner had initially lied to the detectives. *Id.* at 37. Furthermore, when trial counsel reviewed the recording of the conversation between the detectives and Petitioner, he did not believe that Petitioner had requested an attorney. *Id.* at 46. Therefore, trial counsel determined it would be Petitioner's word against the detectives' word and that the motion to suppress would be denied. *Id.* at 43.

No one disputes that Petitioner did not receive a *Miranda* warning during the interview at his home. Doc. [9-13] at 6. The question is if Petitioner was subject to custodial interrogation during the encounter with the detectives at his house requiring a *Miranda* warning. *Miranda* warnings only need to be administered when a person is taken into custody, or his freedom has been significantly restrained. *Oregon v. Elstad*, 470 U.S. 298, 309 (1985). The circumstances of each case influence the determination of whether the suspect is "in custody." *California v. Beheler*, 463 U.S. 1121, 1125 (1983). "[T]he ultimate inquiry is simply whether there is 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Id.* (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977)). "[W]hether a suspect is 'in custody' is an objective inquiry." *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011). "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the

8

interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

When making the determination, the state court analyzed the location, the statements made, the presence or absence of physical restraints, whether Petitioner was informed of the voluntary nature of the interaction, and whether he had freedom of movement during the interview. Doc. [9-13] at 6-7. The state court found that Petitioner was questioned at his home after he invited the detectives inside, he was not handcuffed, his movement was not restricted, and the detectives repeatedly told Petitioner the conversation was voluntary. *Id.* Petitioner argued that he requested an attorney, but this request was not identifiable from the recording of the interview and the motion court did not find any credible evidence to support Petitioner's claim. *Id.*

The state court determined that Petitioner did not establish that a motion to suppress statements made during the questioning would have been meritorious and had not provided any evidence showing that his counsel was not adequate or that the result of the proceeding would have been different if counsel had pursued the motion to suppress filed. Therefore, Petitioner cannot satisfy the "doubly differential" standard required to obtain habeas relief on his claims regarding counsel's ineffective assistance. The state court's decision was not unreasonable and was not based on an unreasonable determination of the facts. Ground 3 is denied.

## CONCLUSION

Accordingly, all of Petitioner's Grounds for relief are denied.

**IT IS HEREBY ORDERED** that the Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, Doc. [1], is **DENIED.**

9

**IT IS FURTHER ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right, and this Court will not grant a certificate of appealability. A separate judgment in accordance with the Memorandum and Order is entered this same date.

Dated this 28th Day of March, 2025

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE